# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

NORFOLK ss.                                                    SUPERIOR COURT
                                                               DEPARTMENT OF
                                                               THE TRIAL COURT

_____
                              )
NICOLE KENN,                  )
                              )
            Plaintiff,        )
                              )
                              )   C. A. No.
v.                            )
                              )
EASCARE, LLC, MARK E. BREWSTER, )
and JOSEPH HUGHES,            )
                              )
            Defendants.       )
_____)

## CLASS ACTION COMPLAINT

1.      This action also seeks class-wide relief on behalf of Plaintiff Nicole Kenn, and the class

she seeks to represent, for violations by Defendant Eascare, LLC ("Eascare") of the Fair Credit

Reporting Act (FCRA), 15 U.S.C. §§ 1681a-1681x.

2.      Employers are increasingly relying on job applicants' credit reports in making hiring

decisions. The FCRA contains a series of important protections for job applicants, designed to

ensure that they are both aware that their credit report is being obtained, and that they are

informed when negative information has affected their ability to get a job, and its source.

3.      The FCRA, among other things, prohibits an employer from obtaining a credit report

without first giving a job applicant a stand-alone document consisting solely of the disclosure of

its intent to obtain the applicant's credit report, and an authorization to do so.   15 U.S.C. §§

1681b(b)(2)(A)(i).  This requirement maximizes the disclosure's clarity, thereby protecting the

job applicant's fundamental right to keep his or her credit and financial information private and

to control access to it.

4.     However, Eascare routinely and systematically fails to adhere to the requirements of the FCRA by conditioning individuals' employment on signing a credit report authorization that does not stand alone, and in fact contains a *waiver* of liability, which does the opposite of protecting job seekers' rights.

5.     Use of such a form disclosure and authorization is a willful violation of the FCRA, 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii). Accordingly, Ms. Kenn now seeks to represent a putative class of individuals whose employment was expressly conditioned on the signing of such unlawful disclosure and authorization forms used by Eascare.

6.     Ms. Kenn also brings individual claims against Eascare for discrimination and retaliation in violation of the Massachusetts Antidiscrimination Statute, M.G.L. c. 151B, §4, and nonpayment of wages in violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148.

## PARTIES

7.     Plaintiff Nicole Kenn resides in Milford, Massachusetts and is a "consumer" within the meaning of 15 U.S.C. § 1681a.

8.     Defendant Eascare, LLC is a domestic limited liability company with a usual place of business located at 25 Main Street, Weymouth, Massachusetts 02188.

9.     Eascare is a "person" as defined by 15 U.S.C. § 1681a(b).

10.     Defendant Mark E. Brewster is the manager of Eascare and, on information and belief, resides in Massachusetts.

11.     On information and belief, at all relevant times, Defendant Brewster has served as an officer or agent having the management of Eascare and has participated to a substantial degree in setting the company's policies.

12.     Defendant Joseph Hughes is the manager of Eascare's Worcester, Hopedale, and

Southborough locations in Massachusetts, and, on information and belief, resides in Worcester,

Massachusetts.

13.     Defendants Eascare and Brewster employed the plaintiff.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction to address this matter pursuant to, *inter alia*, M.G.L. c. 149,

§150, M.G.L. c. 151B §4, and 15 U.S.C. § 1681p.

15.     The Plaintiff has filed a complaint regarding her wage claim with the Massachusetts

Attorney General pursuant to M.G.L. c. 149, § 150.

16.     The Plaintiff filed a complaint regarding her discrimination and retaliation claims with

the Massachusetts Commission Against Discrimination in February 2019.  Pursuant to M.G.L. c.

151B, § 9, the Plaintiff received permission to remove this action to Superior Court.  *See* Exhibit

1.

17.     Venue is proper pursuant to M.G.L. c. 223, § 2 because the defendant maintains a usual

place of business in Norfolk County.

## FACTS

18.     Eascare is a company that provides emergency ambulance services throughout

Massachusetts.

19.     Eascare uses consumer reports to make employment decisions and take adverse actions

against consumers, as those terms are defined by 15 U.S.C. § 1681a.

*Allegations Related To Class-Wide Claims*

20.     In or around January 2018, Ms. Kenn applied for employment with Eascare.

21.     As part of the application process, Eascare directed Ms. Kenn to sign the form attached as Exhibit 2, which she executed on December 20, 2017 (the "Disclosure Form").

22.     The Disclosure Form purports to be a combination disclosure and authorization to procure a background check on Ms. Kenn.

23.     The Disclosure Form provides that the background investigation may include academic, residential, achievement, job performance, attendance, litigation, personal history, credit reports, driving history, and criminal history records consistent with federal and state law.

24.     The purported disclosure and authorization contained in the Disclosure Form included other information, including: a release of all parties involved in obtaining and/or furnishing such credit reports for violating the FCRA.

25.     Without a clear notice that a consumer report is going to be procured on them, applicants like Ms. Kenn have no way to preserve their privacy or to correct errors or other problems with the reports.

26.     When a disclosure and authorization contains an exculpatory clause such as the release of liability in Eascare's Disclosure Form, applicants like Ms. Kenn are misinformed about their legal rights and whether or how they may enforce them.

27.     As a result, Eascare's purported disclosure and authorization was not clear, conspicuous or stand-alone, nor did it validly authorize Eascare to procure Ms. Kenn's consumer report for employment purposes.

28.     Eascare's actions resulted in depriving Ms. Kenn of a clear recitation of her rights and invaded her privacy, including by disseminating Ms. Kenn's private information without proper authorization.

29.     On information and belief, for at least the past five years, Eascare has obtained consumer reports on job applicants and employees for employment purposes using forms that are the same or substantially similar to the Disclosure Form.

30.     Eascare does not provide a clear and conspicuous disclosure to job applicants, in a document that consists solely of the disclosure, as required by 15 U.S.C. § 1681b(b)(2), before obtaining these reports.

31.     As a result, the purported authorization that Eascare requires applicants and employees to sign is invalid, and Eascare obtains consumer reports without authorization.

32.     Eascare's violations of the FCRA are willful, wanton and reckless in that Eascare knew, or should have known, that its actions violated the requirements of the FCRA.

33.     Eascare's willful actions give rise to both statutory and punitive damages, plus attorney's fees and costs under 15 U.S.C. § 1681n(a).

*Allegations Related To Individual Claims*

34.     Eascare hired Ms. Kenn as an emergency medical technician (EMT) in or around January 2018.

35.     Upon her hire, Eascare agreed to pay Ms. Kenn an hourly rate of pay of approximately $16.25 for each hour of work she performed for the company.

36.     In or around October 2018, Ms. Kenn resigned from her position with Eascare.

37.     Prior to October 2018, Ms. Kenn was generally scheduled for approximately 40.5 to 48 hours of work each week, performed in three shifts on Mondays, Wednesdays, and Fridays.

38.     Ms. Kenn performed her job well.

39.     In or around August 2018, Ms. Kenn heard from a coworker that her coworkers were making statements about her at the workplace that were sexual in nature, and based on the fact that Ms. Kenn was a woman.

40.     These included statements such as: Ms. Kenn was a "whore," that she ran the company "with her vagina," was "sleeping around," that employees should "wrap furniture" so they would not catch sexually transmitted diseases (STDs), and, when Ms. Kenn was out of the office, that it was because her STDs were "acting up," or words to that effect.

41.     These comments were made over a lengthy period of time by multiple employees, creating a pervasive atmosphere of harassment at the Eascare locations in which Ms. Kenn performed her duties.

42.     These comments, all of which were sexually offensive, significantly impeded Ms. Kenn's ability to perform her work and caused her significant discomfort, emotional distress, and humiliation.

43.     On or around August 28, 2018, in response to these statements, Ms. Kenn filed a complaint with Eascare describing the statements, identifying the individuals involved, and describing the impact it had on her job (the "Complaint").

44.     On information and belief, about a month later, Defendant Hughes, Ms. Kenn's supervisor, conducted an investigation regarding the Complaint, including interviewing coworkers who confirmed the statements.  Yet, Eascare did nothing to remedy the matter.

45.     Instead, Eascare and Hughes retaliated against Ms. Kenn for filing the Complaint by engaging in a pervasive scheme of adverse employment actions by: (1) cutting her pay; (2) placing her on unpaid administrative leave; (3) effectively cutting her scheduled hours; (4)

denying her requests for time off without merit; and (5) making her job more difficult to perform.

46.     Specifically, Ms. Kenn requested two days off, October 15, 2018 (a Monday) and October 19, 2019 (a Wednesday). Ms. Kenn had previously never had problems getting requested days off approved. Yet, this time, Defendant Hughes failed to either approve or deny the requested days off and instead claimed that Ms. Kenn's absence on those days was a "no-call, no-show" and placed her on unpaid administrative leave.

47.     Respondent Hughes initially told Ms. Kenn that she would remain on unpaid administrative leave until Wednesday, October 15, 2018, but later extended it to the following day.

48.     During that period of time, Eascare made changes to employee work schedules and told employees they needed to select new schedules. Some of these schedules provided 40 hours or more of work, whereas others provided 30 or fewer hours of work. Eascare indicated that employees with greater seniority could select their schedules first.

49.     Defendant Hughes permitted employees with less seniority to pick their schedules before Ms. Kenn. When Defendant Hughes sent Ms. Kenn options for her new schedule, the only remaining options were for 30 hours or fewer. As a result, Respondent Hughes effectively cut Ms. Kenn's hours from over 40 hours to 30 hours per week.

50.     On or around October 15, 2018, while Ms. Kenn was on unpaid administrative leave, Defendant Hughes requested that Ms. Kenn meet with him and an employee from marketing on the following day, October 16, 2018. Ms. Kenn indicated that it was not necessary the employee from marketing to attend, but requested that an employee from human resources attend the

meeting. Defendant Hughes refused and indicated that if Ms. Kenn did not appear, she would be terminated.

51.     Ms. Kenn then called human resources to inform them regarding the proposed termination. An employee in human resources indicated that Ms. Kenn would not be terminated because it might appear to be retaliation for having filed the Complaint. The employee suggested that Ms. Kenn relocate to Eascare's Southborough location in order to remedy the problems with Defendant Hughes. Ms. Kenn indicated she was agreeable to the move.

52.     On or around October 19, 2018, Ms. Kenn submitted a vacation request to Eascare. On the same day, Respondent Hughes denied Ms. Kenn's request because she allegedly did not have any remaining vacation time. However, this was false.

53.     Ms. Kenn continued working for Eascare the following week. As part of her job, Ms. Kenn needed to contact Defendant Hughes for approval for a particular course of action during an emergency call. However, Defendant Hughes ignored many of Ms. Kenn's calls during the workday, impeding her ability to perform her job.

54.     In or around the week of October 29, 2018, Ms. Kenn learned that Defendant Hughes was the supervisor at Eascare's Southborough location, where she planned to transfer due to her ongoing problems with Defendant Hughes.

55.     As a result of being subjected to intolerable work conditions, including feeling as though she was unable to escape Defendant Hughes and continuing retaliatory acts that directly impacted her job performance and well-being, Ms. Kenn resigned from her position with Eascare on or around October 24, 2018.

56.     The adverse employment actions taken by Defendants Eascare and Hughes were discriminatory and retaliatory, and were done so on account of Ms. Kenn's sex as a female and her filing the Complaint.

57.     Defendants Eascare and Hughes' discriminatory and retaliatory actions towards Ms. Kenn were sufficiently severe to materially alter the conditions of Ms. Kenn's employment.

58.     In fact, due to the Defendants' unlawful actions, Ms. Kenn has suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

59.     In addition to the Defendants' other retaliatory actions, after filing the Complaint, in late September 2018, Eascare unilaterally cut Ms. Kenn's hourly rate of pay by $1.00 per hour.

60.     Ms. Kenn subsequently worked numerous hours for Eascare at a rate of pay lower than what the partied has agreed upon.

61.     As a result, Eascare failed to pay Ms. Kenn the full amount of her earned wages when the same became due payable in violation of Massachusetts law.

62.     To date, Eascare owes Ms. Kenn a substantial amount of earned wages.

### Class Action Allegations

63.     Ms. Kenn brings her FCRA-related claims on behalf of a class, pursuant to Mass. R. Civ. P. 23.

64.     The class consists of: (a) all individuals; (b) who applied for employment with Eascare, or were employed by Eascare; (c) about whom Eascare obtained a consumer report for employment purposes; and (d) who completed a disclosure and authorization form that was substantially similar to the one attached as Exhibit 2 at any time in the five years preceding the filing of this Complaint through the date of judgment.

65.     The class members are so numerous that joinder of all members is impracticable.

66.     On information and belief, there are at least 40 class members.

67.     There are questions of law and fact common to class members, which predominate over any questions relating to individual class members. The predominant common questions are:

    a.  Whether the form disclosure and authorization form Eascare required job applicants and employees to complete violated the FCRA because it was not "clear and conspicuous" and did not consist solely of the disclosure;

    b.  Whether Eascare obtained consumer reports about job applicants and employees without authorization, in violation of the FCRA, 15 U.S.C. § 1681b(b)(2) (A)(ii); and

    c.  Whether Eascare's actions were willful.

68.     Ms. Kenn's claims are typical of the claims of class members. All are based on the same factual and legal theories.

69.     Ms. Kenn will fairly and adequately represent class members. She has retained counsel experienced in class action and consumer litigation.

70.     A class action is superior for the fair and efficient adjudication of this matter, in that: individual actions are not economically feasible, members of the class are likely to be unaware of their rights, and individual actions may create the risk of inconsistent results.

## CAUSES OF ACTION

71.     For all counts that follow, the Plaintiff hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

## COUNT I

### NON-PAYMENT OF WAGES IN VIOLATION OF M.G.L. c. 149, § 148
### (Against Defendants Eascare and Brewster Only)

72.     The Massachusetts Weekly Payment of Wages Act requires employers to pay employees their earned wages within six days of the pay period in which they are earned or on the next regular pay date following an employee's resignation. M.G.L. c. 149, §148.

73.     The Defendants failed to pay the Plaintiff the full amount of her earned wages when the

same became due and payable.

74.     The Defendants violated the Weekly Payment of Wages Act, M.G.L. c. 149, §§ 148, 150.

75.     The Defendants' failure to comply with M.G.L. c. 149, § 148 entitles the Plaintiff to

recover treble damages, interest, reasonable attorneys' fees, and cost pursuant to M.G.L. c. 149,

§ 150.

## COUNT II

### DISCRIMINATION ON THE BASIS OF SEX AND RETALIATION
### (Against Defendants Eascare and Hughes Only)

76.     M.G.L. c. 151B, § 4 prohibits:

> "an employer, by himself or his agent, because of the … sex … of any individual
> to … to discriminate against such individual in compensation or in terms,
> conditions or privileges of employment, unless based upon a bona fide
> occupational qualification."

77.     Defendants Eascare and Hughes fostered a pervasive hostile work environment by

permitting its employees to make crude and sexual comments about Ms. Kenn.

78.     As a result, the conditions of Plaintiff's work environment were materially altered,

significantly impeding her ability to perform her work and caused her significant discomfort,

emotional distress, and humiliation.

79.     Subsection 4A of M.G.L. c. 151B, § 4 further prohibits:

> "For any person to coerce, intimidate, threaten, or interfere with another person in
> the exercise or enjoyment of any right granted or protected by this chapter, or to
> coerce, intimidate, threaten or interfere with such other person for having aided or
> encouraged any other person in the exercise or enjoyment of any such right
> granted or protected by this chapter."

80.     When Plaintiff sought to engage in protected activity under M.G.L. c. 151B, § 4 by filing

the Complaint regarding the hostile work environment she was forced to endure, Defendants

Eascare and Hughes retaliated against Plaintiff by reducing her pay, placing her on unpaid administrative leave, effectively cutting her scheduled hours, denying her requests for time off without merit, and otherwise making her job more difficult to perform.

81.     As a result of Defendants Eascare and Hughes' actions, Plaintiff suffered damages, including loss of professional and personal reputation, compensation, and emotional distress.

82.     The Defendants violated M.G.L. c. 151B, § 4 by: (1) fostering a hostile work environment that they failed to remedy when given actual notice; and (2) retaliating against Plaintiff when she complained about the hostile work environment.

83.     The Defendants Eascare and Hughes' failure to comply with M.G.L. c. 151B, § 4 entitles the Plaintiff to damages, including lost wages and emotional distress, interest, reasonable attorneys' fees, and costs pursuant to M.G.L. c. 151B, § 9.

## COUNT III

### FAILURE TO PROVIDE A CLEAR, CONSPICUOUS, AND STAND-ALONE DISCLOSURE IN VIOLATION OF 15 U.S.C. § 1681b(b)(2)(A)(I)
### (Against Defendant Eascare Only)

84.     By including additional language, blanks, disclaimers, and a release of liability in its consumer report Disclosure Form that Plaintiff and other class members were required to execute, Eascare violated 15 U.S.C. § 1681b(b)(2)(A)(i) of the FCRA.

85.     Eascare's disclosure and authorization form was not "clear and conspicuous" and it did not consist solely of the disclosure that a consumer report may be obtained for employment purposes, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i) of the FCRA.

86.     Eascare's actions were willful. Eascare knew or should have known that its Disclosure Form should consist solely of the disclosure, and not include extraneous information.

87.     Ms. Kenn and class members are entitled to statutory damages of not less

than $100, and not more than $1,000, for each violation of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

88.     Ms. Kenn and class members also seek punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT IV

### FAILURE TO OBTAIN PROPER AUTHORIZATION BEFORE PROCURING A CREDIT REPORT IN VIOLATION OF 15 U.S.C. § 1681B(B)(2)(A)(II)
#### (Against Defendant Eascare Only)

89.     Eascare violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by procuring consumer reports for employment purposes without first obtaining valid authorizations from Ms. Kenn and class members.

90.     Eascare's violations of the FCRA in this regard were willful. Eascare knew or should have known that its authorization form was not valid.

91.     Ms. Kenn and class members seek statutory damages of not less than $100 and not more than $1,000 for each such violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

92.     Defendant Eascare's violations of the FCRA also entitle Ms. Kenn and class members to punitive damages, attorney's fees and costs for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

WHEREFORE, the Plaintiff requests that the Court enter final judgment against the Defendants awarding the Plaintiff:

1.      Treble damages, interest, reasonable attorneys' fees, and costs pursuant to M.G.L. c. 149, § 150 for Defendants' failure to pay Plaintiff the full amount of her earned wages when the same became due and payable;

2.      Actual damages, general damages, interest, reasonable attorneys' fees, and costs pursuant to M.G.L. c. 151B, § 9 for Defendants' discriminatory and retaliatory actions against Plaintiff;

3.   An order certifying the proposed class pursuant to Mass. R. Civ. P. 23, appointing the undersigned as class counsel, and Ms. Kenn as class representative;

4.   Statutory and punitive damages for each violation of the FCRA;

5.   Attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2);

6.   Injunctive relief directing Eascare to use pre-employment disclosures that comply with the FCRA; and

7.   Such other relief that the Court deems just.

### THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

NICOLE KENN,
by her attorneys,

Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Law Office of Nicholas F. Ortiz, PC
99 High Street, Suite 304
Boston, MA 02110
(617) 338-9400
rm@mass-legal.com

Dated:  December 3, 2019

# EXHIBIT 1

Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place – Room 601
Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

August 12, 2019

Stephanie C Ozahowski
Law Office of Nicholas F. Ortiz, P.C.
99 High Street, Suite 304
Boston, MA 02110

Sarah C. Spatafore, Esq. and Geoffrey P. Wermuth, Esq.
Murphy Hesse Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169

RE:  Nicole Kenn v. Eascare, LLC, Joseph Hughes
MCAD Docket Number: 19BEM00430
EEOC/HUD Federal Charge Number: 16C-2018-00982

Dear Parties:

The Commission has received notice that the Complainant intends to file a civil action in Superior Court in the above-referenced matter.  Pursuant to M.G.L. Chapter 151B, § 9 (Chapter 478 of the Acts of 1974), the complaint before the Commission is hereby dismissed without prejudice as to the merits.

Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.

Please be advised the Complainant is barred from subsequently bringing a complaint on the same matter before this Commission.

Very truly yours,

Neldy Jean-Francois

Neldy Jean-Francois
Investigating Commissioner

/mbh

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

From:   Stephanie C. Ozahowski, Esq.
        Law Office of Nicholas F. Ortiz, P.C.
        99 High Street, Suite 304
        Boston, MA 02110
To:     (617) 338-9400 sco@mass-legal.com
        Massachusetts Commission Against Discrimination
        One Ashburton Place, Room 601
        Boston, MA  02108
        FAX:  617-994-6024

Re:     Nicole Kenn v. Eascare, LLC, Joseph Hughes _____

        MCAD Docket Number _19BEM00430_____ ; EEOC No: _16C-2019-00982_____

Dear Commissioner:

        I hereby request permission to withdraw my complaint filed with this Commission and if applicable, from the Equal Employment Opportunity Commission, for the following reason:

        (X)     I wish to file a private right of action in civil court.

        ( )     I have reached a satisfactory settlement with the Respondent.

        ( )     I no longer intend to pursue this matter at the Commission.

Authorization for this request is indicated by the following Certification of Withdrawal by Complainant, OR Certification of Authorization to Withdraw by Counsel.

---

Certification of Withdrawal by Complainant

I have been advised that it is unlawful for any person or persons to threaten, intimidate, or harass me because I filed a complaint.  I have not been coerced into requesting this withdrawal.

_____                              _____
Date                                          Complainant's signature

                                             _____
                                              Print Name

---

Certification of Authorization to Withdraw by Counsel

I have been authorized as Counsel of Record for the Complainant and have the authority and permission to sign for the Complainant in this matter.  I have advised the Complainant that it is unlawful for any person or persons to threaten, intimidate, or harass him/her because s/he filed a complaint. Complainant has represented that s/he has not been coerced into requesting this withdrawal.

6/4/2019                                     _____
Date                                          Attorney signature

                                              Stephanie C. Ozahowski, Esq.
                                              Print Name

---

MCAD Withdrawal Form June 2010

# EXHIBIT 2

REDACTED

I, Nicole Kean, hereby authorize, without reservation, PT Research and any party or agency contacted by PT Research, to furnish the above information. I further release and forever discharge Eas Care Ambulance Service, PT Research, and any person/entity from which they obtained information from any liability resulting from providing such information.

! understand that this information will be transmitted electronically and authorize such transmission. I am willing that a photocopy of this authorization be accepted with the same authority as the original, and that if employed by Eas Care Ambulance Service this authorization will remain in effect throughout my employment.

| Signature | Social Security Number | Date |
|---|---|---|
| _Nicole M_ | ▮▮▮▮▮▮ | 12/20/17 |

| Kean | Nicole | Alysa |
|---|---|---|
| Last Name | First Name | Middle Name |
| 34 Emmons St. | Milford | MA    01757 |
| Street Address | City | State    ZIP |
| ▮▮▮▮▮▮ | MA | 05/12/2022. | ▮▮▮▮▮▮ |
| Driver's License Number | State of License | Expires On | Date of Birth |

Milford MA, Hopedale MA, Whitman MA, Marshfield MA, Bridgewater, E. Bridgewater, MA
List any other CITIES AND STATES in which you have lived during the previous 7 years.

N/A
List any other LAST NAMES you have used during the previous 7 years.

N/A
List any other LAST NAMES under which you received your GED, high school diploma, or other degrees.

---

Are you applying for employment in CALIFORNIA*, MINNESOTA, or OKLAHOMA?   ☐Yes ☑No
If so, would you like to request a copy of any report prepared on you?   ☐Yes ☑No

*CALIFORNIA APPLICANTS: Under California law, the reports ordered about you for employment purposes within the State of California are defined as "Investigative Consumer Reports." These reports may contain information on your character, general reputation, personal characteristics, and/or mode of living. Under California Civil Code §1786.22, you may view the report(s) maintained at the CRA during normal business hours. You may also obtain a copy by submitting proper identification and paying the cost of duplication by appearing at the CRA in person, by mail, or by telephone. The CRA is required to have personnel available to explain the report(s) and to explain any coded information. If you appear in person, you may be accompanied by a person of your choice, if s/he furnishes proper identification

NEW YORK and MAINE APPLICANTS: You have the right, upon written request, to be notified whether a consumer report was requested about you by the above-named company.

NEW YORK APPLICANTS: Should a consumer report received by an employer contain criminal conviction information, the employer must provide to the applicant or employee who is the subject of the report, a printed or electronic copy of Article 23-A of the New York Correction Law, which governs the employment of persons previously convicted of one or more criminal offenses.

_NM_ —Please initial here to acknowledge receipt of Article 23-A of the New York Correction Law.

EAS001

HR - Revision 11/2014