UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NICOLE KENN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 20-cv-10070-ADB |
| EASCARE, LLC, MARK E. BREWSTER, and JOSEPH HUGHES | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO REMAND

BURROUGHS, D.J.

On December 5, 2019, Nicole Kenn ("Plaintiff") filed suit against her previous employer, Eascare, LLC, ("Eascare"), an Eascare manager, Mark E. Brewster, ("Brewster"), and her supervisor, Joseph Hughes, ("Hughes," and collectively, "Defendants"). [ECF No. 1-1 at 1–15 ("Compl.")]. Plaintiff alleges that Defendants Eascare and Brewster violated Massachusetts' wage laws under Mass. Gen. Laws ch. 149, §§ 148, 150, (Count I), [id. ¶¶ 72–75], and that Eascare and Hughes discriminated and retaliated against her on the basis of sex in violation of Mass. Gen. Laws ch. 151B, § 4, (Count II), [id. ¶¶ 76–83]. Additionally, Plaintiff seeks to bring a class action against Eascare, alleging that Eascare violated two sections of the Fair Credit Reporting Act, ("FCRA"), by running a background check on Plaintiff and others during the hiring process, (Counts III and IV). [Id. ¶¶ 84–92].

Currently before the Court is Eascare's motion to dismiss Counts III and IV for failure to state a claim, [ECF No. 6], and Plaintiff's motion to remand Counts I and II to state court, [ECF

No. 7].  For the reasons set forth below, both Eascare's motion to dismiss, [ECF No. 6], and

Plaintiff's motion to remand, [ECF No. 7], are GRANTED.

## I.      BACKGROUND

### A.      Factual Background

For purposes of this motion, the relevant facts are drawn from the complaint, [Compl.],

and viewed in the light most favorable to the plaintiff.  See Ruivo v. Wells Fargo Bank, N.A.,

766 F.3d 87, 90 (1st Cir. 2014) (internal citations omitted).

Eascare is a Massachusetts company that provides ambulance services.  [Compl. ¶¶ 8,

18].  In January 2018, Plaintiff applied for a position as an emergency medical technician (EMT)

at Eascare.  [Id. ¶ 20].  As part of the application process, Plaintiff signed a disclosure form and

authorization for Eascare to perform a background check on Plaintiff.  [Id. ¶¶ 21–22].  The

disclosure form provided that Eascare could utilize PT Research, Inc. ("PT Research") to prepare

a consumer report or investigative report under the FCRA and that the "information received

[could] include, but [wa]s not limited to, academic, residential, achievement, job performance,

attendance, litigation, personal history, credit reports, driving history, and criminal history

records consistent with federal and state law."  [ECF No. 6 at 38].[1]  The second page of the form

---

[1] The Court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."  Clorox Co. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (internal citations omitted).  Plaintiff attached one untitled page of the disclosure to her Complaint ("Untitled Page").  In its motion to dismiss, Eascare attached the same Untitled Page and a page called "Consumer Report/Investigative Consumer Report: Disclosure and Release of Information Authorization," ("Titled Page").  Despite not attaching the Titled Page, Plaintiff used language directly from the Titled Page in her Complaint.  [Compl. ¶ 23 (noting that "[t]he Disclosure Form provides that the background investigation may include academic, residential, achievement, job performance, attendance, litigation, personal history, credit reports, driving history, and criminal records consistent with federal and state law.")]; see also [ECF No. 6 at 38 ("[I]nformation received may include, but is not limited to, academic,

included a liability waiver that "release[d] and forever discharge[d] [Eascare], PT Research, and any persona/entity from which they obtained information from any liability resulting from providing such information."  [ECF No. 6 at 39].  Plaintiff executed the forms and was hired by Eascare.  [Compl. ¶ 34].

In August 2018, Plaintiff became aware that coworkers were making sexually offensive comments about her in the workplace, [id. ¶ 39], including comments about her health and personal life, [id. ¶ 40].  Plaintiff alleges that the sexually offensive statements hampered her performance at work and caused her emotional distress and humiliation.  [Id. ¶ 42].  On August 28, 2018, Plaintiff filed a complaint with Eascare regarding these statements.  [Id. ¶ 43]. Plaintiff's supervisor, Defendant Hughes, investigated the complaint and Plaintiff's coworkers confirmed the sexually offensive statements.  [Id. ¶ 44].  Plaintiff alleges that Eascare and Hughes took no further action to resolve the complaint, however, and instead retaliated against her and "engag[ed] in a pervasive scheme of adverse employment actions."  [Id. ¶ 45].  This scheme allegedly included unilaterally cutting her pay, [id. ¶ 59], refusing to accept or deny Plaintiff's requests for days off and subsequently penalizing Plaintiff for taking a requested day off, [id. ¶ 46], allowing less-senior employees to select their new work schedules before Plaintiff after saying that employees could pick based on seniority, effectively cutting Plaintiff's hours, [id. ¶¶ 48–49], and threatening to fire Plaintiff, [id. ¶ 50].  Human resources suggested that Plaintiff transfer to another Eascare location.  [Id. ¶ 51].  Upon learning that Hughes was the

---

residential, achievement, job performance, attendance, litigation, personal history, credit reports, driving history, and criminal history records consistent with federal and state law.")].  As the full two pages are discussed in the Complaint, the Court will consider both.  See Stein v. Royal Bank of Can., 239 F.3d 389, 392 (1st Cir. 2001) (finding that the consideration of a pledge agreement and two letters integral to the complaint did not convert the district court's ruling on a motion to dismiss into one for summary judgment).

supervisor at the location to which she would have been transferred, however, Plaintiff resigned from her position on approximately October 24, 2018.  [Id. ¶¶ 54–55].

Thereafter, Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination.  See [Compl. ¶ 16].  On June 4, 2019, Plaintiff filed a request to withdraw her complaint with the Commission in order to file a complaint in civil court, [id. at 17], and on August 12, 2019 Plaintiff received notification that her request had been accepted, [id. at 17].

### B.   Procedural Background

Plaintiff commenced this action in Norfolk Superior Court on December 5, 2019.  [ECF No. 1].  Defendants subsequently removed to federal court, [id.], and moved to dismiss Counts III and IV under Federal Rule of Civil Procedure 12(b)(6), [ECF No. 6].  Plaintiff opposed, [ECF No. 15], and on January 27, 2020, moved to remand Count I and II of the Complaint, [ECF No. 7], which Defendants opposed, [ECF No. 13].

## II.   LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (internal citations omitted).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

III.    **DISCUSSION**

A.    **Fair Credit Reporting Act**

Plaintiff alleges that Eascare violated the FCRA both by including a liability waiver and other extraneous language on the stand-alone disclosure form and by subsequently running a background check without proper authorization.  [Compl.].  Eascare argues that Plaintiff lacks standing to bring a claim because she has failed to allege that any FCRA violations caused her to suffer a sufficiently concrete or particularized injury.  [ECF No. 6 at 13].  Plaintiff responds that

the violation of the FCRA is sufficient to constitute an injury because her privacy was invaded. [ECF No. 15].

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020) (quoting Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "To satisfy the 'irreducible constitutional minimum' of Article III standing, . . . the plaintiff bears the burden of establishing that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Yershov v. Gannet Satellite Info. Network, Inc., 204 F. Supp. 3d 353, 358 (D. Mass. 2016) (first quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, (1992); and then quoting Spokeo, 136 S. Ct. at 1547).

Defendants argue that Plaintiff has not satisfied the injury-in-fact requirement. [ECF No. 6 at 8]. "An injury-in-fact is the invasion of a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.' Concreteness and particularity are two separate requirements." Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020) (first quoting Lujan, 504 U.S. at 560 (internal quotation marks omitted); and then citing Spokeo, 136 S. Ct. at 1545).

To be particularized, "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1. Plaintiff has alleged that Eascare did not follow the

requirements of 15 U.S.C. §§ 1681b(b)(2)(A)(i–ii) and obtained a consumer report without providing Plaintiff with the stand-alone disclosure required by § 1681b(b)(2)(A)(i).  The Complaint thus alleges a particularized injury because the Complaint "shows that [Plaintiff] was affected in a personal and individual way."  Meza v. Verizon Commc'ns, Inc., No. 16-cv-00739, 2016 U.S. Dist. LEXIS 122495, at *8 (E.D. Cal. Sept. 9, 2016) ("That is, the Complaint alleges that Defendants did not follow the requirements of § 1681b(b)(2)(A) as to [the plaintiff] himself.").

To be concrete, an injury "need not be a 'tangible' injury."  Spokeo, 136 S. Ct. at 1543. Although "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," Raines v. Byrd, 521 U.S. 811. 820 n. 3 (1997), "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," Spokeo, 136 S. Ct. at 1543.  The violation of a procedural right may, in some cases, be sufficient to constitute an injury, id. at 1544, but a "bare procedural violation" is insufficient,  Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 8 (1st Cir. 2018) (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016)); see also Spokeo, 136 S. Ct. at 1543 ("A plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it.").

Since the Supreme Court's decision in Spokeo, courts have distinguished between FCRA violations that are "'trivial' or 'meaningless'" and those that are sufficiently severe that they cause actionable harm.  Landry v. Thomson Reuters Corp., No. 16-cv-00507, 2018 U.S. Dist. Lexis 162741, at *14 (D.N.H. Sept. 24, 2018).  In assessing whether an alleged injury to a plaintiff under the FCRA is sufficiently concrete, the Court considers "(1) whether statutory provisions at issue were established to protect [her] concrete interests (as opposed to purely

procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm, to such interests." Id. at *15 (quoting Robins v. Spokeo, Inc., 867 F.3d 1008, 1113 (9th Cir. 2017) ("Spokeo II")).

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681). The statute provides a private cause of action against those who are willful or negligent in failing to comply with its requirements. 15 U.S.C. §§ 1681n–o. Both the statute's "stand-alone disclosure and authorization requirements are procedures closely tied to FCRA's overarching goals." Groshek v. Time Warner Cable, Inc., 865 F.3d 884, 887 (7th Cir. 2017) (citing S. Rep. No. 104-185, at 35 (1995)).

Under the FCRA's stand-alone disclosure requirement, employers must provide "a clear and conspicuous disclosure . . . made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). The stand-alone disclosure requirement "is clearly designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information." Groshek, 865 F.3d at 887.

Under the authorization requirement, an employer cannot obtain a consumer report unless "the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A)(ii). The authorization requirement further protects applicants by providing that

they may withhold consent and thereby prevent an employer from obtaining a credit report.

Groshek, 865 F.3d at 887 (citing S. Rep. No. 104-185, at 35).

As the Defendants note, courts are split as to whether a violation of the FCRA's stand-alone disclosure and authorization requirements are sufficient to constitute a concrete harm. Some courts have found that the inclusion of other information on the stand-alone disclosure, such as a waiver of liability, is an insufficient injury to confer standing.  See Groshek, 865 F.3d at 889 (finding that plaintiff had not alleged a sufficiently concrete harm based on the inclusion of additional information, including a liability waiver, in the stand-alone disclosure form); Baccay v. Heartland Payment Sys., LLC, No. 17-cv-07779, 2019 U.S. Dist. LEXIS 12790, at *21 (D.N.J. Jan. 28, 2019) (finding that the plaintiff did not have standing based on an injury for including a release on stand-alone disclosure form).  Still other courts, such as the court in Thomas v. FTS USA, LLC, have found that similar violations were sufficient to provide standing.  See 193 F. Supp. 3d 623, 627, 636 (E.D. Va. 2016) ("Here, Thomas, on behalf of himself and the class, has alleged that Defendants invaded the statutory right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent. . . .  This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing."); Moody v. Ascenda USA Inc., No. 16-cv-60364, 2016 U.S. Dist. LEXIS 140712, at *14 (S.D. Fla. Oct. 5, 2016) (finding that because disclosure had not been made in format required by 15 U.S.C. §§ 1681b(b)(2)(A)(i–ii), plaintiff had alleged a concrete injury sufficient to withstand a motion to dismiss).

The Court respectfully disagrees that the inclusion of additional information or documentation, such as a liability waiver, in a disclosure notice automatically constitutes a

sufficiently concrete injury.  See Dyson v. Sky Chefs, Inc., No. 3:16-cv-3155, 2017 U.S. Dist.

LEXIS 92637, at *17 (N.D. Tex. June 15, 2017) ("The Court . . . joins a number of courts

disagreeing with Thomas.").  "Congress was specifically concerned that prospective employers

were obtaining and using consumer reports in a manner that violated job applicants' privacy

rights," Syed v. M-I, LLC, 853 F.3d 492, 496 (9th Cir. 2017) (citing S. Rep. No. 104-185, at 35),

and enacted the FCRA to protect consumers' privacy, Groshek, 865 F.3d at 887.  The goal of the

stand-alone disclosure requirement, "to ensure that certain information is in fact conveyed

clearly to job applicants," aligns with the overall goal of the FCRA by ensuring consumers are

aware and knowingly consent to a background check.  In re Michaels, No. 14-cv-07563, 2017

U.S. Dist. LEXIS 9310, at *14 (D.N.J. Jan. 24, 2017).  The requirement, however, that the

disclosure be provided in a stand-alone document, "the *means* chosen to effect that goal," is

"purely formal."  Id. (emphasis in original).  "[I]t is not difficult to imagine a disclosure placed

on a lone document that fails to convey clearly the information required—say, one in illegible

font or phrased [in] near gibberish.  In [that] case, the appropriate procedural mechanism has

been employed, but without meeting the FCRA's substantive goal."  Stacy v. Dollar Tree Stores,

Inc., 274 F. Supp. 3d 1355, 1362 (S.D. Fla. 2017).  Spokeo makes clear that bare procedural

violations of the FCRA are insufficient to confer standing.  136 S. Ct. at 1550.  "For example,

even if a consumer reporting agency fails to provide the required notice to a user of the agency's

consumer information, that information regardless may be entirely accurate" and "may result in

no harm."  Id.  "Plainly, failure to provide this notice would leave a consumer reporting agency

in non-compliance with the FCRA, and its subsequent actions might well be technically illegal.

But under Spokeo, that fact alone—without more—does not suffice to implicate substantive

[injuries]."  Shoots v. iQor Holdings US Inc., No. 15-cv-536, 2016 U.S. Dist. LEXIS 144559, at

*13 (D. Minn. Oct. 18, 2016) (internal citations omitted).  The mere fact of technical non-compliance does not establish that individuals have suffered a sufficiently concrete injury.  "The Court thus concludes that violation of the FCRA's stand-alone document requirement does not automatically cause a concrete injury for purposes of Article III standing.  In doing so, the Court joins the vast majority of other courts that have so held."  Stacy, 274 F. Supp. 3d at 1363.

Although a procedural violation of FCRA does not automatically confer standing, a procedural violation may cause injuries that are sufficient.  See Landrum v. Blackbird Enters., LLC, 214 F. Supp. 3d 566, 570 (S.D. Tex. 2016) ("The failure to provide information in accordance with a statute could constitute a concrete injury."); Baccay, 2019 U.S. Dist. LEXIS 12790, at *14 ("The issue is not whether 'technical or procedural requirements *may* cause concrete harm, [but] whether the violation *has* caused such harm,' an analysis that is 'situation-dependent.'" (emphasis in original) (quoting In re Michaels, 2017 U.S. Dist. LEXIS 9310, at *7)).  Some courts have ruled that, though a violation of the FRCA is itself insufficient to provide standing, plaintiffs may allege that they were prejudiced, for example if they were somehow confused by the additional information in the disclosure or otherwise prevented from exercising their rights.  See Ruiz v. Shamrock Foods Co., 804 F. App'x 657, 659 (9th Cir. 2020) (finding at the summary judgment stage that additional information in FCRA disclosure, including state law and liability waivers, did not establish a concrete harm where plaintiff had not alleged confusion or that he would have refused to sign the form); Stacy, 274 F. Supp. 3d at 1363–64 (finding that the inclusion of additional information in disclosure form was not sufficient to allege concreteness where the plaintiff had understood the disclosure form).

Thus, although a mere technical violation of the statue is not sufficient to establish standing, the Court will go on to review Plaintiff's allegations to determine if she has sufficiently

alleged a concrete harm as a result of the allegedly deficient disclosure.  See Spokeo II, 867 F.3d at 1113 (analyzing whether a plaintiff's harm under the FCRA was sufficiently concrete by examining first "whether statutory provisions at issue were established to protect his concrete interests," and second, "if so . . . whether the specific procedural violations alleged . . . actually harm, or present a material risk, to such interests").

Here, Plaintiff argues that the violation of § 1681b(b)(2)(A) violates "two distinct, substantive rights" that Congress sought to protect: first, an informational right, and second, a right to privacy.  See [ECF No. 15 at 6]; see also Meza, 2016 U.S. Dist. LEXIS 122495, at *9–10 (finding that improper stand-alone disclosure under § 1681(b)(2)(A)(i) was an informational injury and that the use of the authorization under § 1681(b)(2)(A)(ii) was an invasion of privacy); Thomas, 193 F. Supp. 3d at 631–32 (finding that violations of § 1681b(b)(2)(A) implicate an informational injury and an invasion of privacy).

### 1. Informational Injury

"[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."  Fed. Elections Comm'n v. Akins, 524 U.S. 11, 21 (1998).  In Akins, for example, the Supreme Court found that plaintiffs had suffered an injury-in-fact after they requested information pursuant to the Federal Election Campaign Act and were refused.  Id.  The FCRA, however, "does not seek to protect [Plaintiff] from the kind of harm [s]he claims [s]he has suffered, i.e., receipt of a non-compliant disclosure."  Groshek, 865 F.3d at 888.  "Congress did not enact § 1681b(b)(2)(A)(i) to protect job applicants from disclosures that do not satisfy the requirements of that section; it did so to decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report."  Id.

As pled, Plaintiff has not alleged that she was confused by, or unaware of, the document she was signing, and Plaintiff's conclusory allegations are insufficient to allow the Court to infer confusion or misapprehension.  See [Compl. ¶ 25 ("Without a clear notice . . . applicants like [Plaintiff] have no way to preserve their privacy or to correct errors or other problems with the reports."); id. ¶ 26 ("When a disclosure and authorization contains an exculpatory clause such as the release of liability in Eascare's Disclosure Form, applicants like [Plaintiff] are misinformed about their legal rights and whether or how they may enforce them.")].  Cf. Syed, 853 F.3d at 499 (inferring that the plaintiff "was deprived of the right to information and the right to privacy guaranteed by Section 1681(b)(b)(2)(A)(i–ii) because" he alleged that he "discovered [the defendant's] violation(s) . . . when he obtained and reviewed his personnel file from [the defendant]").  Ultimately, Plaintiff's allegation of an informational injury fails because she has not alleged that "the extraneous language, allegedly contained in the Disclosure Form, caused any actual confusion about whether her personal information would be made available for a background check."  Baccay, 2019 U.S. Dist. LEXIS 12790, at *15–16.

> ## 2. Right to Privacy

"An individual's right to privacy, both as to certain personal information and private locations, has long 'been regarded as providing a basis for a lawsuit in English or American courts.'"  Yershov, 204 F. Supp. 3d at 362 (quoting Spokeo, 136 S. Ct. at 1549).  "[I]t is well-settled that Congress may create a statutory right to privacy in certain information that strengthens or replaces the common law, and citizens whose statutory right to informational privacy has been invaded [have standing to] bring suit under the statute to vindicate that right."  Id. (quoting Thomas, 193 F. Supp. 3d at 635).

Because Plaintiff consented to the report and has not sufficiently pled that she suffered an informational injury in that she misunderstood the form, supra Section III.A.1, or the subsequent authorization, Plaintiff cannot sustain an argument for an invasion of privacy.  See Stacy, 274 F. Supp. 3d. at 1364 ("[W]hen an employee consents to a background check, her claim of a privacy injury necessarily requires an underlying informational injury."); see also Groshek, 865 F.3d at 889 (finding an allegation of a violation of § 1681b(b)(2)(A)(ii) as conclusory where the plaintiff signed the disclosure that contained a liability waiver and the authorization).  Here, Plaintiff signed the authorization and has not sufficiently alleged confusion, distraction, or misunderstanding of the form.  See Baccay, 2019 U.S. Dist. LEXIS 12790, at *18 ("[T]here can be no invasion of privacy, . . . because . . . Plaintiff explicitly authorized the disclosure of her information.").

Therefore, the Defendant's motion to dismiss Counts III and IV, [ECF No. 6], is GRANTED without prejudice.

### B.     State-Law Claims

 Having determined that Plaintiff's claims under federal law must be dismissed for want of standing, the Court exercises its discretion and elects not to consider Plaintiff's supplemental state-law claims, which arise under Massachusetts General Laws Chapter 149, §§ 148 and 151B.  Under 28 U.S.C. § 1367(c), "[a] district court 'may decline to exercise supplemental jurisdiction' if the court 'has dismissed all claims over which it has original jurisdiction.'"  Eves v. LePage, 842 F.3d 133, 146 (1st Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)), vacated in part and reinstated in part by 927 F.3d 575, 589 (1st Cir. 2019) (reinstating opinion as to dismissal of state-law claims).  "The Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward

declining to exercise jurisdiction over the remaining state-law claims.'" Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  The Court does not find, and the parties have not raised, any unusual circumstances that would counsel against declining to exercise jurisdiction over the remaining state-law claims.[2]  As a matter of judicial efficiency, the Court therefore remands the case to state court for consideration of the state-law claims.  See Rojas-Velàzquez v. Figueroa-Sancha, 676 F.3d 206, 213 (1st Cir. 2012) ("Because the only federal claims in this suit were properly dismissed, the court's decision not to exercise supplemental jurisdiction over the pendent claims cannot seriously be questioned." (internal citations omitted)).  Thus, Plaintiff's motion to remand Counts I and II, [ECF No. 7], is GRANTED.

### C.      Attorneys' Fees and Costs

Plaintiff argues that attorneys' fees and costs are appropriate as Defendants removed from state court on the basis that this Court had subject matter jurisdiction and then moved to dismiss for lack of standing.  [ECF No. 15 at 12–13].

"[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  "The First Circuit has not defined what constitutes 'objectively

---

[2] Plaintiff argues in her motion for remand that the class action and individual claims do not arise from the same nexus of operative fact.  [ECF No. 8].  In light of the Court's decision to dismiss the federal law claims, most of the Defendants' arguments against remand are inapposite.  See [ECF No. 13].  Further, even if Plaintiff files a new complaint in federal court, the state court claims alleged in the instant complaint are sufficiently unrelated to any federal cause of action to warrant remand regardless.

reasonable' grounds for removal, although many district courts have declined to award fees unless the facts are 'so one-sided as to have made remand a foregone conclusion.'" Niedzinski v. Cooper, No. 19-cv-40037, 2019 U.S. Dist. LEXIS 158529, at *20 (D. Mass. Aug. 14, 2019) (quoting Huston v. FLS Language Centres, 18 F. Supp. 3d 17, 25 (D. Mass. 2014)).

The Court finds that Plaintiff is not entitled to attorneys' fees and costs.  Removal was appropriate, as the FCRA raises federal question jurisdiction, and the subsequent dismissal of Plaintiff's claims under the FCRA and remand of her state law claim was not "so one-sided as to have made remand a foregone conclusion," id. at *20, especially as circuits have split on the issue of what constitutes necessary harm under § 1681b(b)(2)(A).  See Arrighi v. Cintas Corp. No. 2, No. 10-cv-0237S, 2010 U.S. Dist. LEXIS 121741, at *12 (D.R.I. Aug. 30, 2010) (remanding after finding the defendant was not entitled to an equitable exception to the one year limit on removal and refusing attorneys' fees and costs after finding that removal was not objectively unreasonable where circuits were split and the First Circuit had not weighed in on the issue).  Therefore, Plaintiff's request for attorneys' fees and costs, [ECF No. 15 at 12–13], is DENIED.

IV.     **CONCLUSION**

Accordingly, Eascare's partial motion to dismiss as to Counts III and IV, [ECF No. 6], is GRANTED without prejudice and Plaintiff's motion to remand Counts I and II, [ECF No. 7], is GRANTED.  Plaintiff's request for attorneys' fees and costs, [ECF No. 15], is DENIED.

**SO ORDERED.**

September 1, 2020                                    /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE